**Leah MacKNIGHT, Plaintiff, Appellant,**

v.

**LEONARD MORSE HOSPITAL, et al.,**
**Defendants, Appellees.**

No. 87–1181.

United States Court of Appeals,
First Circuit.

Submitted June 30, 1987.

Decided Sept. 4, 1987.

Andrew B. Ross, Framingham, Mass., Robert K. LeRoy and Ross & Martin, on brief, for plaintiff, appellant.

James F. Lamond, Alan J. McDonald and McDonald, Noonan & Kaplan, Newton, Mass., on brief, for defendant, appellee Massachusetts Nurses Assn.

Thomas Royall Smith, Joan I. Milstein and Jackson, Lewis, Schnitzler & Krupman, Boston, Mass., on brief, for defendant, appellee Leonard Morse Hosp.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

PER CURIAM.

Plaintiff appeals from the summary judgment for defendants. She contends the court erred in denying her requests for a continuance and discovery. We review the background.

In February 1986, plaintiff brought an action contending she had been wrongfully discharged from her position as a certified registered nurse anesthetist (CRNA) by de-

fendant hospital and that defendant union had failed in its duty of fair representation to her. In particular, she contended that union representative Stephanie Craig and union attorney Kathryn Noonan had conspired to ensure that she would not prevail in an arbitration proceeding contesting plaintiff's discharge, had deliberately delayed the discharge arbitration hearing so as to prejudice plaintiff's chances for reinstatement, and, in general, had not properly or timely represented plaintiff.

Defendants moved for summary judgment and filed affidavits, a copy of the brief the union had filed in one arbitration proceeding, and copies of the arbitrators' decisions. The principal affidavits, from Stephanie Craig, a nurse employed by the union to investigate and present grievances, stated as follows. In mid-September 1984, plaintiff informed Craig she had been suspended for three days without pay. Craig filed a grievance on plaintiff's behalf. Plaintiff told Craig other people had engaged in the same sort of conduct without being disciplined, and plaintiff felt her supervisor, Dr. Bhatia, was discriminating against her. Plaintiff identified one person she said could verify her claim. Craig contacted the identified person. That person said she could not corroborate plaintiff's claim regarding other similar incidents and was unwilling to assist in plaintiff's case. Craig informed plaintiff of this. Thereafter, on October 26, 1984, Craig represented plaintiff at a grievance hearing. The hospital upheld the suspension, whereupon Craig caused a demand for arbitration to be filed. On December 10, 1984, plaintiff informed Craig that the hospital had terminated her employment because of a December 3, 1984 incident. Craig prepared a grievance contesting the discharge. She then contacted an experienced certified nurse anesthetist from a large hospital and reviewed with her the facts as had been related by plaintiff of the incidents resulting in the suspension and discharge. The CRNA replied that she could not testify on plaintiff's behalf because the conduct described was dangerous and unprofessional. Craig also spoke with Nurse Dennis who had been present at the incident for which plaintiff was discharged. Dennis was unwilling to appear on plaintiff's behalf. The union decided not to subpoena Dennis because her testimony would be prejudicial.

The hospital denied the discharge grievance, and Craig caused to be filed a demand to arbitrate the discharge. Meanwhile, on January 4, 1985, plaintiff and Craig met with Attorney Noonan to prepare for the upcoming arbitration regarding the three day suspension. According to Craig, Noonan explained to plaintiff that the union was going to proceed with the suspension arbitration because if that discipline were overturned, plaintiff would have a better chance of prevailing at the discharge arbitration. Plaintiff voiced no disagreement. At the suspension arbitration hearing in January 1985, Noonan cross-examined the hospital's only witness, Dr. Bhatia, introduced documentary evidence, and conducted a lengthy direct examination of plaintiff. The arbitrator sustained the grievance, reduced the three day suspension to a written warning, and ordered plaintiff made whole for the three day loss of pay.

In preparation for the discharge arbitration hearing, Craig met with the five or six CRNA's then employed by the hospital, Craig stated in her affidavits. All were unwilling to testify for plaintiff and could not corroborate plaintiff's claim that she had been discriminatorily treated by Dr. Bhatia. Craig informed plaintiff of this and explained it would be disadvantageous to subpoena them. On April 24, 1985, plaintiff, Craig, and Attorney Noonan met to prepare for the discharge arbitration. The hearing commenced on May 15, 1985, but could not be concluded that day. Dr. Bhatia was to be out of the country from June 7 to July 15, the arbitrator was not available prior to that, and the hearing was therefore scheduled to resume on August 1, 1985. At the hearing, Attorney Noonan cross-examined the hospital's witnesses, objected to evidence, and conducted a direct examination of plaintiff. The arbitrator upheld the discharge, ruling plaintiff had been grossly negligent.

In response to defendants' lengthy and detailed affidavits and motions for summary judgment, plaintiff filed a motion for continuance, plaintiff's attorney representing the following by affidavit. On January 21, 1986 (well after the dates of the arbitration decisions) Craig had stated to him during a telephone conversation that in her opinion plaintiff should never again be allowed to be a CRNA and had asked whether he would want plaintiff passing gas to his mother. The attorney had concluded that but for the union's bad faith, plaintiff would have been reinstated. He asserted plaintiff could not file opposing affidavits without first deposing Craig and Noonan. Thereafter, plaintiff noticed Noonan's and Craig's depositions, and defendants moved to stay discovery until defendants' motions to dismiss and for summary judgment had been ruled upon.

The court held a hearing to determine whether further discovery was needed before plaintiff could reasonably be expected to file an opposition to the motions for summary judgment. At the hearing, plaintiff's attorney pointed to Craig's telephone statements that plaintiff should not be allowed to be a CRNA as the "strongest piece of evidence" justifying discovery. The court explained that Craig's personal feelings about plaintiff were irrelevant—to establish a breach of the duty of fair representation, some indication of improper conduct on the union's part was required. The court then offered counsel further time to show that he had had some reasonable basis after reasonable inquiry for having filed the lawsuit. Counsel protested, complaining that plaintiff was a lay person and could not be expected to know whether or not the union had violated its duty of fair representation. In a subsequent motion, counsel elaborated, contending that plaintiff was challenging the soundness of the decisions Noonan and Craig had made during the grievance process, hence the relevant facts were exclusively within their possession, and therefore discovery should be allowed. The court disagreed and again gave plaintiff a further opportunity to present some "*factual* showing to support the contention that discovery is likely to develop evidence of a dispute of an identified, material fact...."

Thereafter, plaintiff filed an affidavit stating that on numerous occasions she had protested to Attorney Noonan the continuance of the discharge arbitration hearing from May 15, 1985 to August 1, 1985; that Noonan had replied it was none of plaintiff's business; that the three month hiatus had been done with malice and had prejudiced plaintiff's case; that on "diverse occasions" plaintiff had requested Noonan and Craig to procure expert witnesses but they had failed to do so; that plaintiff had arranged for other nurse anesthetists to testify on plaintiff's behalf but that, in plaintiff's belief, defendants had influenced them not to testify and plaintiff had brought this matter to Noonan's and Craig's attention; that Noonan had refused to help plaintiff prepare testimony for the arbitration hearings; that plaintiff's termination was because of a personality clash with Dr. Bhatia; that defendants had failed to investigate the cause of the termination; and that other nurse anesthetists had made mistakes resulting in the deaths of two patients but had not been disciplined. The affidavit did not identify either the experts plaintiff had allegedly arranged for or the nurses involved in the supposedly more egregious incidents, was not shown to be based exclusively on personal knowledge, and, in general, was vague and conclusory. Defendants moved to strike the affidavit, pointing out in detail its deficiencies.

Several months later, the court held a hearing on defendants' motion to strike. In the meantime, plaintiff had made no attempt to cure the affidavit's deficiencies. The court struck much of the affidavit, asked plaintiff's counsel if he wanted a further opportunity to submit anything, and then entered summary judgment for defendants when counsel repeated his position that discovery was needed. Plaintiff appealed and repeats the arguments made to be the district court.

 Plaintiff contends it was unfair of the district court to deny her the means to oppose defendants' motion for summary judgment (that is, to refuse to allow plain-

tiff to depose Craig and Noonan) and then to enter summary judgment for defendants when plaintiff failed adequately to respond. We see no unfairness and agree with the district court's rulings. When asked at the July 1986 hearing to justify a continuance for the purpose of discovery, the only thing to which counsel pointed in support of plaintiff's action for breach of the union's duty of fair representation was Craig's telephone statement that plaintiff should not be allowed to work as a CRNA again. Craig's personal opinion concerning plaintiff's competence, however, stated after investigation and after the arbitration had been concluded adversely to plaintiff, was an entirely insufficient basis upon which to seek to oppose defendants' motion for summary judgment. As we explained in *Early v. Eastern Transfer,* 699 F.2d 552 (1st Cir.), *cert. denied,* 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983), it is only in narrow circumstances that a plaintiff is not bound by the result reached through the collective bargaining grievance machinery and may challenge a discharge in court. "A breach of the statutory duty of fair representation occurs only when a union's conduct ... is arbitrary, discriminatory, or in bad faith," and "seriously undermine[s] the integrity of the arbitral process." *Id.* at 555. Mere negligence or error is not enough. Nor, by themselves, do hostility or animosity on the part of the union towards the grievant establish a breach of the duty of fair representation. Rather, "[t]o establish such a breach it must be shown that [the] *handling* of the grievance was itself materially deficient." *Id.,* at 556 (emphasis added).

To be sure, we did not have before us in *Early* the question whether a showing of hostility was enough to justify discovery. (Rather, the question, decided adversely to appellant, was whether a showing of hostility was sufficient to survive a motion for summary judgment.) We conclude, however, in the circumstances of the present case, that the district court did not err or abuse its discretion in concluding plaintiff had not made even a minimal showing warranting the requested discovery.

First, other than to refer to Craig's telephone call and the expectation that Craig, if deposed, would not deny having stated to plaintiff's counsel that plaintiff should not practice as a CRNA, counsel never articulated precisely what he hoped or expected to uncover by deposing Craig and Noonan. *See Taylor v. Gallagher,* 737 F.2d 134, 137 (1st Cir.1984) ("A court may grant summary judgment despite an opposing party's claim that discovery would yield additional facts where the opposing party has not alleged specific facts that could be developed through discovery").

Second, there is nothing remarkable in a person's reaching a conclusion in line with the arbitrator's after a grievance proceeding.

Third, the union had presented affidavits detailing the lengths it had gone to in processing plaintiff's grievances, as well as the success it had achieved on the suspension grievance. No inkling of dereliction of duty appeared.

Fourth, and most importantly, the relevant facts with which to contradict many of the statements in the union's affidavits were not solely and exclusively within defendants' possession. Plaintiff was present at the arbitration hearings and meetings proceeding them and hence knows, in broad terms, what was done. If Craig's affidavit were inaccurate, plaintiff, without engaging in discovery, could have stated, for example, whether Craig had reported back to her that the potential witness plaintiff had identified as well as the five or six CRNA's employed at defendant hospital were unwilling to testify, whether the union's decision to proceed with the suspension arbitration had been communicated to her, and whether plaintiff had voiced an objection to that decision. True, plaintiff would not have had personal knowledge whether Craig had indeed contacted a CRNA from another hospital, but that that person had refused to testify on plaintiff's behalf as an expert witness. That, however, does not justify discovery. If plaintiff's contention is that the union's duty of fair representation required it to do more to secure an expert witness, we reject it in the circumstances of this case. Not

only, according to Craig, had she contacted an outside expert, but she had also spoken to all the CRNA's employed by the hospital, and no one could or would support plaintiff. If it is plaintiff's contention that an expert who would have testified on her behalf could have been procured with reasonable effort, we think plaintiff was required to do more than to allege in vague terms that she had arranged for expert testimony for the district court to be required to permit Noonan's and Craig's depositions. Plaintiff either should have identified the expert and obtained an affidavit from him or her or, if it truly were the case that the expert had subsequently refused to testify after first having agreed to, plaintiff should have named the expert and stated in detail the contents of the expert's earlier agreement and subsequent declination.

As for plaintiff's attempt to premise a breach of the union's duty of fair representation on the three month delay in the resumption of the discharge arbitration hearing, even if plaintiff's affidavit statement that Noonan had said the delay was none of plaintiff's business were accepted, no genuine issue of *material* fact would be presented. Plaintiff has not claimed that she lost crucial evidence because of the delay. In view of the arbitrator's decision upholding the discharge, we do not see any possibility of legally cognizable prejudice from the fact that the decision issued later rather than sooner. Plaintiff's allegations that Noonan refused to help plaintiff prepare testimony fare no better. They are too conclusory in the face of Craig's detailed affidavit stating what Craig and Noonan did do.

In short, plaintiff utterly failed to comply with Fed.R.Civ.P. 56(e) and (f) requiring plaintiff either to file an affidavit based on personal knowledge setting forth *facts* which would be admissible in evidence showing that genuine issues of material fact remain for trial or to give a sufficient reason why such an affidavit could not be procured. She did not even make a minimal showing requiring the district court to allow her requested discovery.

At no time did plaintiff suggest any reasonable basis to conclude discovery might

uncover anything indicative of *conduct* on the union's part which was not merely negligent but rather was "arbitrary, discriminatory, or in bad faith" and which "seriously undermined the integrity of the arbitral process," *Early*, 699 F.2d at 555. Hence, the court did not err or abuse its discretion in refusing to subject Noonan and Craig to a fishing expedition and in granting defendants a stay of discovery. Before filing the complaint, counsel had the obligation to determine that the complaint was "well grounded in fact." Fed.R.Civ.P. 11. Consequently, it was not asking too much to require plaintiff to disclose some relevant facts and basis for them before the requested discovery would be allowed. *See also* 4 Moore's Federal Practice ¶ 26.56[1] at 26–95 n. 3 ("discovery cannot be used as a vehicle for discovering a right of action"); *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 597 (1st Cir.1980) ("as a threshold matter, the court should be satisfied that a claim is not frivolous, a pretense for using discovery powers in a fishing expedition").

We agree with defendant union's contention that this appeal, as briefed, is frivolous and grant the union's request for double costs. Attorneys' fees are denied.

The judgment is affirmed pursuant to First Circuit Rule 27.1.