E.A. MILLER, INC., & another[1] *vs.* SOUTH SHORE BANK.[2]

Suffolk. February 9, 1989. — June 12, 1989.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil,* Discovery, Summary judgment. *Secured Transactions. Bank. Uniform Commercial Code,* Good faith, Secured transactions.

A defendant in a civil action was entitled to a protective order under Mass. R. Civ. P. 26 (c) to stay all discovery until a determination of its motion for summary judgment, in circumstances where the plaintiffs made no minimal, threshold showing that any factual basis existed for their claim of bad faith on the part of that defendant. [99-100]

In a civil action in which the plaintiffs alleged they were damaged by bad faith on the part of a bank, the bank's motion for summary judgment was correctly granted where the plaintiffs adduced no evidence that the defendant contributed to the plaintiff's losses by any wrongful action or inaction. [100-102]

CIVIL ACTION commenced in the Superior Court Department on March 2, 1987.

A motion for a protective order was heard by *John J. Irwin, Jr.,* J., and the case was heard by *John C. Cratsley,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John C. Foskett* for the plaintiffs.

*Gary R. Greenberg* (*Louis J. Scerra, Jr.,* with him) for the defendant.

ABRAMS, J. The plaintiffs appeal from a judgment of the Superior Court dismissing the only count against the defendant South Shore Bank (bank).[3] The plaintiffs challenge the correct-

---

[1] Spencer Beef Corporation.

[2] Also named as defendants in this action were New York Boxed Beef Corp., Frederic Bossman, and Helen Bossman. Only South Shore Bank is involved in this appeal. See note 4, *infra.*

[3] The complaint originally contained another count against the bank, but that count was dismissed with prejudice by stipulation of the parties.

ness of a protective order precluding discovery, and the subsequent entry of an order for summary judgment and the entry of the judgment. See Mass. R. Civ. P. 56 (b), 365 Mass. 824 (1974). The plaintiffs argue that the judge erred by not allowing the plaintiffs to pursue discovery before acting on the defendant's motion for summary judgment. The plaintiffs assert that, without discovery of facts exclusively within the control of the bank, the plaintiffs were unable to oppose summary judgment effectively.[4] We transferred the case to this court on our own motion. We affirm.

The following facts were uncontroverted for purposes of summary judgment. E.A. Miller, Inc. (Miller), and Spencer Beef Corporation (Spencer) are both meat packers engaged in the business of processing and selling meat and meat products. Miller provided Spencer with administrative and management

---

[4] The plaintiffs served interrogatories and requests for production of documents on the defendants along with the complaint. In lieu of answering, the bank moved for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), or, alternatively, to dismiss count ten (the count at issue here) for failure to state a claim pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The bank moved at the same time for a protective order under Mass. R. Civ. P. 26 (c), 365 Mass. 772 (1974). The plaintiffs opposed the bank's motion with a motion under Mass. R. Civ. P. 56 (f), to continue the motion for summary judgment pending the completion of discovery. This motion was accompanied by the affidavit of the plaintiffs' counsel. A Superior Court judge allowed the bank's motion for a protective order. The plaintiffs then moved for reconsideration of the motion for a protective order and, pursuant to rule 56 (f), again moved for a continuance of the motion for summary judgment, and to stay consideration of the motion for summary judgment. These motions were accompanied by the affidavit of Gary L. Lundberg. The motion for reconsideration was denied. The plaintiffs petitioned a single justice of the Appeals Court for relief. G. L. c. 231, § 118, first par. The single justice of the Appeals Court denied relief. The plaintiffs moved again pursuant to rule 56 (f) for a continuance of the motion for summary judgment. This motion was accompanied by the affidavit of Dennis Leishman. Another Superior Court judge entered summary judgment in favor of the bank. He also certified that there was no just cause to delay entry of final judgment as to the defendant bank. See *Blood* v. *Lea*, 403 Mass. 430, 432 (1988); Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974).

The plaintiffs claim error in the allowing of the protective order, and in the entry of summary judgment. If the judge erred in the allowance of the protective order, then it would have been error to deny the rule 56 (f) motions. We therefore do not discuss those motions separately.

services, including receiving and filling orders for Spencer's products and collecting payments. From July, 1985, through October, 1986, the plaintiffs sold meat to the defendant New York Boxed Beef Corp. (Boxed Beef). It was the parties' practice that Boxed Beef would telephone orders to the plaintiffs. The plaintiffs would advise Boxed Beef of any outstanding invoices. When Boxed Beef paid those invoices, the plaintiffs would then ship the new order to Boxed Beef.

Boxed Beef placed a telephone order with the plaintiffs on October 30, 1986, for approximately $250,000 worth of meat. The plaintiffs advised Boxed Beef of unpaid invoices. The next day they received two checks, totalling approximately $155,000, and drawn on the defendant bank, in payment of those invoices. The plaintiffs deposited those checks and released the meat for delivery.

A few days later, the plaintiffs learned from the son of Boxed Beef's president that the defendant bank was liquidating Boxed Beef. On November 7, 1986, the plaintiffs issued a notice in conformance with the Uniform Commercial Code, G. L. c. 106, § 2-702 (2) (1986 ed.), reclaiming the meat they had delivered to Boxed Beef. On November 10, 1986, the plaintiffs learned that the bank had dishonored Boxed Beef's checks for insufficient funds. The meat was never returned to the plaintiffs, nor did they ever receive any proceeds of its sale.

The validity of the bank's asserted security interest in Boxed Beef's inventory is the crux of the plaintiffs' complaint against the bank. The bank had extended credit to Boxed Beef, and purportedly held a perfected security interest in Boxed Beef's entire inventory and proceeds, including after-acquired inventory. The security agreement gave the bank the right to inspect Boxed Beef's records, books, and files, and Boxed Beef was obliged to deliver all invoices, papers, and evidence of performance of contracts to the bank. The plaintiffs argue that the security interest did not attach and is not enforceable against them because the bank did not act in good faith toward them. Thus, when the bank refused to return the plaintiffs' reclaimed meat, the plaintiffs claim that the bank became liable for conversion.

In an affidavit from Gary L. Lundberg, the Miller employee responsible for extending Spencer's credit to Boxed Beef, the plaintiffs set forth facts that assertedly establish the bank's bad faith. Lundberg stated that he first spoke to Mark Swartz, a bank employee, in November, 1985: "At that time Mr. Swartz represented that there was a 2 million dollar credit line available to [Boxed Beef]; that while money was tight, [Boxed Beef] paid the bank 'every day'; that 'things were getting better' and that [Boxed Beef] was having a good year."

The affidavit went on to relate that sometime later, apparently in January, 1986,[5] one of Boxed Beef's checks was dishonored. Swartz told Lundberg "that [the bank] had made a 'mistake' and that there was no problem with respect to [Boxed Beef] or its finances. [Lundberg] asked if the bank would issue a Letter of Credit [but Swartz] declined to do [so] because there was no available collateral. [Swartz] explained that [Boxed Beef] was then $100,000 over its credit line. However, he went on to assure [Lundberg] that . . . an investor was about to invest a 'substantial' amount of money in the company and that [Boxed Beef's] cash flow would be improved significantly. [Lundberg] asked him if he felt comfortable with the way [Boxed Beef] was being run and he said that he was comfortable and that [Boxed Beef] was paying as agreed."

The plaintiffs also submitted the affidavit of Dennis Leishman, the Miller employee responsible for extending Miller's credit to Boxed Beef: "During a conversation with Mr. Swartz in December[,] 1985, [Leishman] was advised that [Boxed Beef] had not 'bounced' any checks since 1983 and that it had a 2 million dollar revolving credit line from [the bank]. Mr. Swartz advised [Leishman] that on the day of [their] conversation, [Boxed Beef] had used $1,716,000 of its credit and that its account fluctuated between $1,800,000 and $1,400,000." Leishman and Lundberg worked together at Miller and shared information. Both Leishman and Lundberg stated

---

[5] Lundberg's affidavit does not specify the date of this second conversation. The bank points out in its brief that Swartz left the bank in January, 1986. At oral argument the plaintiffs conceded that the conversation took place ten months before the October, 1986, transaction.

that they relied on the above representations of the bank in extending credit to Boxed Beef.

Lundberg's affidavit states further that he met with the defendant Frederic Bossman in November, 1986, after Boxed Beef's checks were dishonored and liquidation had commenced. Bossman was the president of Boxed Beef. Bossman told Lundberg at that point that Boxed Beef "was being liquidated because [the bank] 'pulled its credit line' . . . . Bossman also stated that [Boxed Beef] was 'always' over its credit limit, sometimes by as much as $800,000[,] and that [the bank] condoned this practice because [Boxed Beef] often wrote checks exceeding its credit limit and [the bank] inevitably honored those checks."

The plaintiffs maintain that, through discovery, they could obtain evidence of the bank's bad faith. They argue that discovery is essential because the bank's good or bad faith is a matter of state of mind, and hence the evidence of it is peculiarly within the bank's possession. See *Catalina Yachts* v. *Old Colony Bank & Trust Co.*, 497 F. Supp. 1227 (D. Mass. 1980). They assert that a showing of the bank's bad faith toward the plaintiffs would negate the bank's perfected security interest in the goods the plaintiffs sold to Boxed Beef, or the proceeds thereof. See *Matter of Samuels & Co.*, 526 F.2d 1238, 1243 (5th Cir.), cert. denied sub nom. *Stowers* v. *Mahon*, 429 U.S. 834 (1976); *Limor Diamonds, Inc.* v. *D'Oro by Christopher Michael, Inc.*, 558 F. Supp. 709 (S.D.N.Y 1983).[6]

We must determine whether the Superior Court judge[7] erred in issuing a protective order staying all discovery prior to a determination of the motion for summary judgment. *Merles* v. *Lerner*, 391 Mass. 221, 226 (1984). Rule 26 (c) of the

---

[6] The plaintiffs concede that, if the bank acted in good faith, its rights as holder of a perfected security interest are superior to those of the plaintiffs, as unpaid reclaiming sellers. See G. L. c. 106, § 2-403 (1) (*b*) (1986 ed.); *Matter of Samuels & Co.*, supra at 1241, 1242; *Catalina Yachts* v. *Old Colony Bank & Trust Co.*, supra at 1236.

[7] The same issue was considered by two Superior Court judges and a single justice of the Appeals Court. We assume, in this opinion, that the main error claimed by the plaintiffs is the issuance of the protective order, and we therefore refer to that judge's ruling. See note 4, *supra.*

Massachusetts Rules of Civil Procedure, 365 Mass. 772 (1974), requires "good cause shown" as a basis for issuance of a protective order. The substance of the bank's arguments on the motion for a protective order was that any discovery entails "annoyance, embarrassment, oppression, or undue burden or expense" to a party who, as a matter of law, is entitled to summary judgment. See Mass. R. Civ. P. 26 (c). The judge agreed and granted the bank's motion for a protective order. There was no error.

Litigants may be denied an opportunity for discovery if their complaints and affidavits have "not made even a minimal showing warranting the requested discovery." *MacKnight* v. *Leonard Morse Hosp.*, 828 F.2d 48, 51 (1st Cir. 1987). "[D]iscovery cannot be used as a vehicle for discovering a right of action." *Id.* at 52, quoting 4 Moore's Federal Practice par. 26.56[1], at 26-95 n.3 (1987). Having failed to make a minimal, threshold showing that there is a factual basis to support their complaint, litigants are not entitled to discovery prior to disposition of a motion for summary judgment. *MacKnight* v. *Leonard Morse Hosp.*, *supra* at 51-52. On the record, the plaintiffs failed to meet the threshold requirement of showing that they had some factual basis to support their claim of bad faith on the part of the bank.

We agree with the plaintiffs that "[t]he granting of summary judgment in a case where a party's state of mind or motive constitutes an essential element of the cause of action is disfavored." *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984). We disagree with the plaintiffs' contention that evidence of the bank's alleged bad faith is relevant in these circumstances or that it would be in the bank's exclusive possession.

The Uniform Commercial Code defines "[g]ood faith" as "honesty in fact in the conduct or transaction concerned." G. L. c. 106, § 1-201 (1986 ed.). The essence of bad faith, in this context, is not the state of mind but rather the attendant bad actions. See *A. John Cohen Ins. Agency, Inc.* v. *Middlesex Ins. Co.*, 8 Mass. App. Ct. 178, 182 (1979) (affidavit insufficient to show bad faith where "[i]t does not describe conduct

. . . which is either contrary to the notion of 'good faith' or consistent with 'bad faith' . . ."). If there had been bad actions — if the bank had misled the plaintiffs or induced them to deliver goods to Boxed Beef on credit — the plaintiffs would have at least some evidence themselves, and with it they could defeat the bank's motion for a protective order and summary judgment. See *id*.

This case is unlike *Burk* v. *Emmick*, 637 F.2d 1172 (8th Cir. 1980), or *Catalina Yacht* v. *Old Colony Bank & Trust Co.*, *supra*, in both of which cases a bank representative induced reliance at the time of the transaction in which the loss occurred. In the present case, the plaintiffs do not allege that there had been any communication between them and the bank in October, 1986, when the plaintiffs sold their products to Boxed Beef on credit. The conversations with the bank's representative in December, 1985, and January, 1986, occurred fully ten months before Boxed Beef's liquidation. Even if Swartz's statements can be interpreted as misleadingly optimistic about Boxed Beef's financial health at that time, they made no pretense of predicting Boxed Beef's creditworthiness ten months thence. If the plaintiffs relied on Swartz's January statements in October, they did so at their peril. The plaintiffs properly do not argue that the bank was under a duty to inform Boxed Beef's suppliers of a change in Boxed Beef's status nor that the bank was obliged to continue to honor the overdrafts of an insolvent borrower. *Matter of Samuels & Co.*, *supra* at 1243. Without proof of wrongful action or inaction that contributed to the plaintiffs' loss, the bank officers' state of mind is irrelevant.

The plaintiffs argue that the bank exerted control over Boxed Beef's affairs and that it was therefore liable for Boxed Beef's misrepresentations. We do not agree. A secured party's knowledge that there are other potential creditors generally does not put any burden on the secured party to keep the other creditors notified of the debtor's financial condition. Therefore, the plaintiffs' contention that the bank failed to provide such notice does not give rise to a claim of bad faith. *Matter of Samuels & Co.*, *supra* at 1243-1244. Cf. *Thompson* v. *United States*, 408 F.2d 1075, 1084 (8th Cir. 1969).

"A court may grant summary judgment despite an opposing party's claim that discovery would yield additional facts where the opposing party has not alleged specific facts that could be developed through such discovery." *Taylor* v. *Gallagher*, 737 F.2d 134, 137 (1st Cir. 1984). On the record before us, the plaintiffs lacked a minimal basis in fact for their allegations *before* they sought discovery. Parties may not "fish" for evidence on which to base their complaint "in hopes of somehow finding something helpful to [their] case in the course of the discovery procedure." *Charbonnier* v. *Amico*, 367 Mass. 146, 153 (1975). The plaintiffs' allegations and affidavits, read in the light most favorable to them, do not give rise to a genuine issue of material fact. We conclude that there was no error in issuing a protective order and in the subsequent allowance of the bank's motion for summary judgment.

*Judgment affirmed.*