Agnes, Peter W., J.
I. INTRODUCTION
The plaintiff, Interface Systems Group, Inc. (“ISG”) brought this action against CJS Holdings II, Inc. (“CJS”) and Clifford J. Schorer alleging breach of contract and violations of M.G.L.c. 93A in relation to a commercial lease covering property owned by the defendant in Milford, Massachusetts. Specifically, Interface seeks to recover for an alleged overpayment of both rent and monthly expenses due under the lease, as a result of the alleged breach by CJS. This matter is now before the court on the plaintiffs consolidated motion to quash subpoenas and for summary judgment. [1] For the reasons discussed below, following a hearing and consideration of the record, the plaintiffs motion for summary judgment is ALLOWED.
FACTUAL BACKGROUND
The undisputed facts, as set forth in the record, are as follows. In late 2000, CJS and ISG began to negotiate for a lease of a portion of a building owned by CJS, which was to be used as warehouse space (“the space”). On or about January 1, 2001, the parties *487 executed a lease for the space. The lease was for a term of four years and provided that the commercial tenant, ISG, was to pay monthly rent, as well as a monthly building expense, both of which were to be calculated based upon a price per square foot computation for the total space demised under the lease.
The lease contained four separate provisions which stated the total amount of square footage to be leased to ISG. In all but one of these provisions, the lease called for the demise of “35,000 square feet.” The remaining provision, however, called for the demise of “approximately 35,000 square feet.” At the time the lease was executed, the warehouse space covered under the lease to ISG had not yet been partitioned from the remaining space inside the 80,000 square foot building. Consequently, the lease provided that “Landlord [was] to deliver possession to Tenant as soon as partition is erected.”
On or about April 1, 2001, the partition had been completed and CJS delivered possession of the space to ISG. On September 28, 2004, CJS sold its interest in the space, bringing an end to the landlord-tenant relationship between the parties. However, ISG continued to lease the space from the defendant’s successor in interest. Throughout the lease term with CJS, it was the practice of ISG to sublet the space to various subtenants. On July 12, 2005, ISG received a request from its primary subtenant, TJ Maxx, to reorganize the internal layout of the warehouse. This resulted in ISG engaging the services of a licensed engineer to take measurements of the space and to draft a plan for the proposed new layout. This plan disclosed that the total square footage of the space demised to ISG was 26,499 square feet, 8,501 square feet less than that which was contemplated in the lease between ISG and CJS. ISG then brought this suit against CJS to recover any overpayments in rent and building expenses, which resulted from the actual demised space being less than 35,000 square feet.
II. DISCUSSION
A. Standard Applicable to Summary Judgment
Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Pederson, 404 Mass, at 17. Additionally, all evidence must be viewed in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992).
B. Duly of Court to Interpret Unambiguous Contract
Here, the lease that was executed between the parties contained a merger clause, thereby, making the contract an integrated writing.[2] The Parol evidence rule bars introduction of prior or contemporaneous written or oral agreements that contradict, vary, or broaden an integrated writing; it does not bar extrinsic evidence that elucidates the meaning of ambiguous contract terms. Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496 (1997). Even in the absence of such a clause, where the written terms of the contract are not ambiguous on their face, extrinsic evidence is not admissible to contradict them. Robert Indus., Inc. v. Spence, 362 Mass. 751, 754 (1973). Furthermore, “If a contract... is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment. Seaco Ins. Co. v. Barbosa 435 Mass. 772, 779 (2002).
The primary argument advanced by CJS, in opposition to summary judgment being granted, is that there exists an ambiguous provision in the lease concerning the amount of space which was to be leased to ISG. Specifically, CJS contends that the provision of the lease, which defines the demised space as “approximately 35,000" square feet, is an ambiguous description of the exact space covered under the lease. They claim that the interpretation of the term ’’approximately" is a question of fact to be determined at trial. Furthermore, extrinsic evidence should be allowed to help define the meaning of the term “approximately,” as the parties understood its meaning during the lease negotiations. The Court finds this argument unpersuasive.
In interpreting contracts, “words that are plain and free from ambiguity must be construed in their usual and ordinary sense.” Cady v. Marcella, 49 Mass.App.Ct. 334, 338 (2000); citing Ober v. National Cas. Co., 318 Mass. 27, 30 (1945). Furthermore, the meaning of a term used in a contract is usually determined by reference to its common meaning, as reflected in dictionary definitions, unless the parties have expressed an intent that a different point of reference should be used. Town of Boylston v. Comm’r of Revenue, 434 Mass. 398, 405 (2001). The lease does not provide that the parties intended to use the word “approximately” in any special or technical way, so we turn to the dictionary to find its ordinary meaning. The Oxford Desk Dictionary defines “approximate” as “fairly correct; near to the actual.” The Oxford Desk *488 Dictionary and Thesaurus 36 (2nd Am. ed., Oxford U. Press 2002). Here, the lease provides for the demise of “approximately 35,000 square feet.” In order to decide if the space demised to ISG complied with this provision, it is not necessary for the court to decide what does constitute “approximately 35,000 square feet.” Instead, it is sufficient to find, and this Court holds as a matter of law, that 26,449 square feet does not
Next, CJS argues that ISG executed an Estoppel Certificate, prior to CJS selling their interest in the property, which precludes ISG from asserting any claims or offsets to their obligations under the lease.[3] This argument is without merit. The Estoppel Certificate is an instrument that was executed, by ISG, for the benefit of a third party which was in the process of purchasing the building where ISG was a tenant. The certificate, which was executed on or about September 28, 2004, merely states that ISG was not aware of any such claims which could be asserted against CJS at the time of its execution. As previously noted, ISG did not learn of the actual measurements of the space until the engineering plan was created in 2005. The Estoppel Certificate will not be interpreted to be a waiver of any future claims that ISG may have had against CJS.[4]
ORDER
For the foregoing reasons, the plaintiffs motion for summary judgment against CJS is ALLOWED.

The plaintiffs motion to quash stems from the defendant’s attempt to depose both the plaintiff and its attorneys in relation to the lease negotiations. In light of this Court’s finding that extrinsic evidence will not be admitted to contradict the terms of the lease, the court need not address the motion to quash. Litigants may be denied an opportunity for discovery if their complaints and affidavits have “not made even a minimal showing warranting the requested discovery.” E.A. Miller, Inc. v. South Shore Bank, 405 Mass. 95, 100 (1989); citing MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 51 (1st Cir. 1987).

The merger clause, contained in Section 45.11 of lease, reads as follows:
45.11 Entire Agreement This Lease contains the entire agreement of the parties hereto and no representations, inducements, promises or agreements, oral or otherwise, between the parties, not embodied herein’, shall be of any force or effect.

The Estoppel Certificate provides in pertinent part:
Interface Systems Group, Inc. . . . , the Tenant under a lease . . . demising approximately 35,000 square feet of space ... between Tenant and CJS Holdings II, Inc., upon written request hereby certifies that: c. The tenants know of no defenses or offsets or defaults, as of the date hereof, relating to Tenant’s obligation to pay rent and to perform its other obligations under the lease.

Because there is no request for double or treble damages under G.L.c. 93A, it is unnecessary to consider that claim any further.