Muse, Christopher J., J.
On March 16, 2010, the plaintiffs, Edward Beck, Jr., and Josephine Beck, filed a complaint for declaratory and injunctive relief against the defendant, Fidelity National Insurance Company (“Fidelity”), to compel payment of a claim they brought under their homeowners’ insurance policy after they sustained a fire at their Natick residence on December 14, 2009. This matter is before the court on the plaintiffs’ motion for a temporary restraining *177 order to prevent Fidelity from conducting unreasonable discovery in its investigation of the claim and to compel certain payments under the terms of the policy. Although the plaintiffs brought this motion as a request for injunctive relief, this court shall countenance the motion as a request for a protective order,[2] as set forth below.
BACKGROUND
On December 15, 2009, the Natick Police and Fire Departments investigated the fire at the plaintiffs’ home and determined that there was no evidence that the fire was anything but accidental, and that it may have been attributable to an overheated light fixture. During a hearing on the plaintiffs’ motion held on March 29, 2010, a Natick fire investigator, James Ordway, testified that no new information has come to light since the initial investigation.
On January 15, 2010, Fidelity notified the plaintiffs that it would make payments on their claim under a full reservation of rights. On January 22, 2010, pursuant to the policy and G.L.c. 175, §99, Fidelity requested that each plaintiff submit to an examination under oath, as well as provide numerous documents, including but not limited to cellular telephone records, e-mail correspondence, FastLane usage, GPS data, all debit and credit card transactions, and income tax returns.
On the advice of counsel, the plaintiffs declined to produce certain documents unless Fidelity provided some sort of basis for its requests. On February 18, 2010, Edward Beck, Jr., submitted to an examination under oath, during which his counsel advised Fidelity’s counsel that he would not produce the requested documents unless Fidelity provided a reasonable basis for suspecting that the fire was set intentionally. On February 24, 2010, Josephine Beck submitted to an examination under oath and adopted a similar stance with regard to the voluminous document requests. After some correspondence between the parties’ respective counsel, the plaintiffs filed the instant action for declaratory and injunctive relief, asserting that Fidelity has violated Chapter 93A by refusing to treat the plaintiffs with candor and by threatening to deny their claim if they did not submit to its discovery demands.
At the March 29 hearing on this motion for a temporary restraining order, the parties represented that the Becks had produced or agreed to produce the financial documents that Fidelity requested, including all income tax returns and recent credit reports. When pressed as to what purpose would be served by further examination of the plaintiffs, Fidelity indicated that among the topics of inquiry would be the plaintiffs’ respective histories of substance abuse, if any, as well as whether they had ever applied for public assistance.
DISCUSSION
Contrary to what Fidelity suggests, an insurer’s authority to compel the insured to submit to examinations under oath and to produce documents is not unlimited. General Laws c. 175, §99, Twelfth, contemplates that the scope of examination of an insured pursuant to the chapter will be limited to what is “reasonably required.” The imposition of a standard of reasonableness in the statute necessarily implies that the court exercising jurisdiction over the matter shall exercise a degree of superintendence in determining what is reasonable under the statute.[3]
To determine whether Fidelity seeks to discover only so much as is “reasonably required” to protect its interests, this court looks for guidance to Mass.R.Civ.P. 26, which generally governs depositions and discovery. Under Mass.R.Civ.P. 26(c), the court may issue a protective order “to protect a parly or person from annoyance, embarrassment, oppression, or undue burden or expense . . .” Discovery requests must also be within the scope of Mass.R.Civ.P. 26(b), which states in part that a party may obtain information “which is relevant to the subject matter involved in the pending action.” Judges have wide discretion in discovery matters, and preventing abuses of the discovery process is sufficient justification for issuing a protective order. See Cronin v. Strayer, 392 Mass. 525, 534-36 (1984).
Against this backdrop, certain of Fidelity’s requests, i.e., information regarding substance abuse or applications for public assistance, are completely irrelevant at this juncture, given the complete dearth of evidence to establish that the fire that affected the plaintiffs’ home was anything but accidental. Since December 15,2009, the sole evidence pertaining to the source and origin of the fire indicates that it was simply an unfortunate event, and there is no credible information pointing to anything untoward about the plaintiffs’ claim.
As Fidelity has not offered any information to counter the Natick fire investigator’s report that the fire appears to have been accidental, the court concludes that Fidelity’s requests are unduly burdensome and serve no purpose other than to annoy, embarrass, or oppress the plaintiffs. See Mass.R.Civ.P. 26(c). While Fidelity maintains that the requested documents and examinations under oath are necessary in order to complete its investigation into the plaintiffs’ claims, it has not made even a minimal showing that further examination is likely to substantiate its allusions that the plaintiffs intentionally caused the fire. See E.A. Miller. Inc. v. South Shore Bank, 405 Mass. 95, 100 (1989) (discovery may be denied where parties fail to make “even a minimal showing warranting the requested discovery”). Whatever private suspicions Fidelity may harbor, they are not sufficient to justify Fidelity’s dragnet of every aspect of the plaintiffs’ personal lives.[4] Because the court can discern no good-faith basis for Fidelity’s assertion that additional inquiry into the plaintiffs’ highly personal affairs is “reasonably required,” a protective order is appropri *178 ate to prevent Fidelity from abusing its contractual and statutory right to discovery. Contrast Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333, 334-37 (1995) (fire insurer’s request to examine plaintiff was reasonable where authorities had deemed plaintiff a criminal suspect in arson investigation and plaintiff refused to submit to an examination under oath pursuant to policy and G.L.c. 175, §99, Twelfth).
ORDER
For the foregoing reasons, it is hereby ORDERED that Fidelity shall not conduct any further examinations of the Becks, or request that they produce any additional documents, until further notice of this court. This order shall not apply to documents that the Becks have already produced or agreed to produce. To the extent that the Becks seek to compel payments for repair of their home and for living expenses, their motion is denied without prejudice.

 See Ahem v. Warner, 16 Mass.App.Ct. 223, 225 (1983), and cases cited (courts shall treat a motion “according to its obvious character rather than its label”).

 Curiously, although Fidelity acknowledged during oral arguments on the plaintiffs’ motion that it derives its authority to scrutinize the plaintiffs from the policy and from G.L.c. 175, §99, it also intimated that this court lacks authority to officiate its discovery requests to ensure that they are “reasonably required” within the meaning of the statute. Fidelity offered no authority in support of this special exemption and, suffice it to say, this court disagrees.

 While an insurer is certainly not required to “forgo a thorough investigation of a claim that it has a reasonable basis for regarding as suspicious,” it is obligated to “deal with its insured with candor and fairness.” See Trempe v. Aetna Cas. & Sur. Co., 20 Mass.App.Ct. 448, 455 (1985). Failure to do so may subject the insurer to liability under Chapters 93A and 176D. Id. Accordingly, insurers may not use an insured’s duty to cooperate under G.L.c. 175, §99, as an instrument unreasonably to delay payment to customers who paid a premium for that coverage.