A. JOHN COHEN INSURANCE AGENCY, INC. *vs.* MIDDLESEX INSURANCE COMPANY & another.

Suffolk.    March 13, 1979. — July 30, 1979.

Present: HALE, C.J., ROSE, PERRETTA, JJ.

*Practice, Civil*, Summary judgment. *Insurance*, Termination of agency contract. *Contract*, Insurance agency.

In an action by an insurance agency alleging that the defendant insurance companies had terminated their insurance agency contract with it in bad faith, allowance of the defendants' motion for summary judgment was warranted where the acts described in the plaintiff's affidavit were insufficient to create an inference of bad faith. [182-183]

In a civil action, the plaintiff could not complain that its failure to provide more facts in its affidavit in opposition to the defendants' motion for summary judgment was attributable to its inability to secure evidence by discovery prior to the summary judgment where the plaintiff had failed to avail itself of Mass.R.Civ.P. 56(f). [183-184]

CIVIL ACTION commenced in the Superior Court on November 16, 1976.

The case was heard by *Linscott*, J., on a motion for summary judgment.

*Edward T. Dangel, III*, for the plaintiff.

*Roberta L. Paris* for the defendants.

PERRETTA, J. The plaintiff, A. John Cohen Insurance Agency, Inc. (agency), brought this action in the Superior Court against the defendants, Middlesex Insurance Company and Patriot General Insurance Company (companies), alleging that the companies had terminated their insurance agency contract with it in bad faith. The agency sought a declaration that the contract, which was terminable at will by either the agency or the companies, impliedly required termination for just cause. It also sought specific performance of the contract or, in the alternative, damages. The companies moved for summary judgment, and the trial judge allowed the motion, and entered summary judgment for the companies. We affirm the judgment.

An insurance agency relationship had existed among the parties since 1969.[1] In February of 1975 the agency intended to discontinue its business with the companies due to their "unstable financial condition." The companies then launched a campaign of persuasion against the agency, urging it not to withdraw its business because the companies were reorganizing, and they desired to preserve the relationship. The companies were rewarded for their intensive efforts, and in March of 1975 they and the agency entered into a contract. The contract entitled the agency "to receive and accept proposals of insurance" based upon "classes of risk and terms" designated by the companies. It also contained a terminable-at-will provision.[2] The parties thus continued their relationship, all

---

[1] The record does not reveal the terms or conditions of this original relationship.

[2] "(8) This Agreement may be terminated by either the Company or the Agent on written notice to the other, subject to the following provisions:

(a) The Agent having promptly accounted for and paid over premiums as provided elsewhere in this contract for which he may be liable, the Agent's records, use and control of expirations, shall remain the property of the Agent and be left in his undisputed possession; other-

performing amicably, until the beginning of May, 1976, when the companies' field representative orally informed the agency's president that the companies would not write any more "personal lines business" with the agency. The agency made numerous requests of the companies for a conference in order that their decision could be discussed or explained, but the companies denied all these requests. About a week after the agency first heard of the impending contract modification, it received a letter from the companies which stated that "the Company feels it is no longer in a position to entertain [p]ersonal [l]ines business for your agency." The only new or renewable "personal lines" policies that the companies intended to consider were those which had "[c]ommercial support." The letter, dated May 13, 1976, also advised the agency that these changes were to be effective as of June 1, 1976. The agency regarded this change as a drastic and unexpected reduction of its business with the companies, and it sought, but did not receive, an explanation from them. Within a month the field representative again informally advised the agency that they were about to terminate the entire agency agreement. In response to this information the agency decided that it should minimize any adverse publicity that could result from the termination by taking the initiative and striking the first blow. Accordingly, it sent the companies a thirty days' written notice of termination[3] (see note 2, *supra*). However, the

---

wise the records, use and control of expirations shall be vested in the Company to the extent of the indebtedness free of all competition by the Agent.

(b) After termination, Agent shall refund ratably commissions on insurance cancelled and reduction in premiums at the same rate at which such commissions were originally retained.

"(9) Provided the Agent has not breached the terms of this contract, upon termination the parties hereto shall execute a limited Agency Agreement permitting service by the Agent of policies remaining in force."

[3] In its opposing affidavit, the agency asserts that it in fact had no real desire to discontinue its relationship with the companies, that it

impact of this maneuver was somewhat diminished by the fact that on the same day that it sent its letter, the companies sent to the agency written notice of termination,[4] and the letters crossed in the mail. When the agency's repeated requests for an explanation were ignored by the companies, it commenced this action which has as its basis the allegation of bad faith termination of the agency contract. See *Fortune* v. *National Cash Register Co.*, 373 Mass. 96 (1977).

Our review of the granting of the motion for summary judgment is controlled by the standard most recently repeated in *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 725-726 (1979): "If the moving party by his supporting materials satisfies the burden of showing that there is no genuine issue of material fact and that he is entitled, as matter of law, to a judgment (*Community Natl. Bank* v. *Dawes*, [369 Mass. 550,] 554 [1976] . . .), the opposing party may not rest on his pleadings, but must allege specific facts which establish a triable issue in order to avoid entry of a summary judgment." The companies' motion and affidavit are based upon the agency's notice of termination. The agency does not dispute that it sent the notice; rather, it asserts in its opposing affidavit (Mass.R.Civ.P. 56[e], 365 Mass. 825 [1974]) that the letter was prompted by and was the result of the companies' wrongful acts. See e.g., Restatement (Second) of Agency § 455, & Comment a (1958). The companies did not contradict the facts which were set out in the agency's affidavit. The issue thus before us is whether the agency's affidavit recites facts sufficient to raise a genuine issue of material fact as to the legality of the companies' termina-

sent this letter to save face in the insurance community and to cut its losses, and that it would not have terminated the contract but for the advance information of the companies' intention to do so.

[4] While the agency's notice was controlled by the contract (see note 2, *supra*), the companies' notice was controlled by statute. G. L. c. 175, § 163, as amended through St. 1973, c. 1056.

tion of the contract. "[G]ranting summary judgment is error when the party opposing the motion has alleged facts relating to the transaction on which suit has been brought which raise issues entitling him to a trial. See *McMahon* v. *M & D Builders, Inc.*, 360 Mass. 54, 57-58 (1971)." *Dawes, supra* at 556.

The agency argues that the acts described in its affidavit, when viewed in their totality, create an inference of bad faith, and, consequently, a question of fact exists based upon *Fortune, supra* at 104: "We believe that the holding in . . . [*Monge* v. *Beebe Rubber Co.*, 114 N.H. 130, 133 (1974)] merely extends to employment contracts the rule that ' "in *every* contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in *every* contract there exists an implied covenant of good faith and fair dealing" [emphasis supplied]. *Uproar Co.* v. *National Broadcasting Co.*, 81 F.2d 373, 377 (1st Cir.), cert. denied, 298 U.S. 670 (1936), quoting from *Kirke LaShelle Co.* v. *Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933).' *Druker* v. *Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976). Restatement (Second) of Contracts § 231 (Tent. Drafts. Nos. 1-7 1973). 5 S. Williston, Contracts § 670 (3d ed. 1961)." Even assuming, without deciding, that *Fortune* is applicable to the present agency contract,[5] the agency's opposing affidavit is insufficient. It does not describe conduct by the companies which is either contrary to the notion of "good faith" or consistent with the description of "bad faith," as set out in Restatement (Second) of Contracts § 231, Comments a and d (Tent. Draft No. 5 1970). There is no allegation of conduct of the type found indicative of bad faith in *Fortune*, termination to

---

[5] "In the instant case, we need not pronounce our adherence to so broad a policy nor need we speculate as to whether the good faith requirement is implicit in every contract for employment at will." *Fortune, supra* at 104. See also, Comment, Employment Contracts-Implied Covenant of Good Faith, 62 Mass.L.Q. 241 (1977).

avoid payment of bonus credits. The affidavit is silent as to any act by the companies which constitutes an aspect of fraud, deceit, or misrepresentation. See *Kilroy* v. *Barron,* 326 Mass. 464, 465 (1950); *Barrett Assoc.* v. *Aronson,* 346 Mass. 150, 152 (1963); *Dunn* v. *Holladay,* 6 Mass. App. Ct. 842 (1978). It gives no intimation that the companies acted for a reason which "contrasts" with "cause," as discussed in *Amoco Oil Co.* v. *Dickson,* 378 Mass. 44, 46-48 (1979). We are not unmindful of the fact that summary judgment on a matter dealing with motive, intent, or subjective feelings requires "great circumspection." Nonetheless, "[t]here must be some indication that [the agency] can produce the requisite quantum of evidence to enable [it] to reach the jury with [its] claim." *Hahn* v. *Sargent,* 523 F.2d 461, 468 (1st Cir. 1975, cert. denied, 425 U.S. 904 (1976).

The agency cannot complain that its failure to provide more facts in its affidavit was attributable to its inability to secure the evidence, if any, by discovery prior to the summary judgment.[6] At no time during the proceedings did the agency avail itself of Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974). A party must resort to that rule when it is opposing summary judgment and is unable to present a sufficient affidavit because the necessary facts or evidence are possessed or controlled by the moving party. "[T]he opposing party must show to the best of his ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules; and that he is desirous of taking advantage of these discovery procedures." 6 Moore's Federal Practice par. 56.24, at 1432 (2d ed. 1979). See *Reinstein* v.

---

[6] The complaint was filed November 16, 1976, and the motion and affidavit were filed on January 26, 1977. On February 8, 1977, the agency filed its opposing affidavit, and the motion was referred to a special master who made his recommendation of allowance on May 17, 1977. Notice of this was sent on June 2, 1977, and judgment entered on June 9, 1977.

*Police Commr. of Boston*, 378 Mass. 280, 285-286 (1979); *Schneider* v. *McKesson & Robbins, Inc.*, 254 F.2d 827, 830 (2d Cir. 1958); *Berne St. Enterprises, Inc.* v. *American Export Isbrandtsen Co.*, 289 F. Supp. 195, 197 (S.D.N.Y. 1968). Such material in the affidavit furnishes a basis upon which the trial judge can provide a solution to the party's alleged predicament.

Because the agency failed to file a sufficient affidavit under either rule 56(e) or (f), there was no error in allowing the motion for summary judgment.

*Judgment affirmed.*