**Jerry TONER and Charles Potter, Jr., Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 92–624 MMS.**

United States District Court, D. Delaware.

Aug. 24, 1993.

Thomas Hodukavich, Wilmington, DE (Adrian F. Lanser, III, Lanser, Levinson & Paul, Cartersville, GA, of counsel), for plaintiffs.

Jon E. Abramczyk of Morris, Nichols, Arsht & Tunnell, Wilmington, DE (Peter M. Katsaros of Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, IL, of counsel), for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### I. INTRODUCTION

Plaintiffs, Jerry Toner and Charles Potter, displeased with the amount of their net compensation, brought suit against their employer, defendant Allstate Insurance Company. Plaintiffs filed a Second Amended Complaint after this Court, by Opinion and Order dated May 13, 1993, dismissed Counts I and II of their [First] Amended Complaint. Defendant has moved to Dismiss the Second Amended Complaint.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Toner and Potter have been insurance agents of the Allstate Insurance Company since 1968 and 1983 respectively. Docket Item ["D.I."] 44 at ¶¶ 4, 5. These relationships are governed by what has been termed an "R830 Agreement" or an Allstate Agent Compensation Agreement. *Id.* Exhibit ["Ex."] A. Until 1985 the plaintiffs' relationships with defendant is best described as that of employer/employee in the conventional sense, as "their work procedures and methods were governed by Allstate and Allstate provided all support, in-

cluding, but not limited to overhead, cost of sales, support staff and marketing materials." *Id.* at ¶ 6. In 1985 plaintiffs were offered and accepted a different employment relationship with defendant. Plaintiffs became Neighborhood Office Agents ["NOAs"]. This was accomplished, not as it first appeared by entering into new employment contracts,[1] but by modifying the existing R830 agreements by the addition of a Neighborhood Office Agent Amendment. *See Id.* Ex. C. This new status was more entrepreneurial in nature since less home office control was exercised over plaintiffs and plaintiffs as NOAs became responsible for payment of their own overhead expenses. *Id.* at ¶ 8. Under the NOA program Allstate was contractually obligated to reimburse plaintiffs for overhead expenses in the form of an "office expense allowance" ["OEA"], with the amount of reimbursement being dependant on, *inter alia,* the amount of new business plaintiffs generated. *Id.* at ¶ 9. Specifically, the amendment states, "Allstate reimburses actual expenses to the limit of the agent's OEA for specified office expenses as described in the Neighborhood Office Agent Manual(s). Any amount spent in excess of the OEA is the responsibility of the agent." *Id.* Ex. C.

Plaintiffs contend defendant knowingly failed to disclose that OEA would fall far short of covering plaintiffs' overhead expenses and affirmatively misrepresented that OEA would be sufficient to cover such expenses. Plaintiffs state they have spent thousands of dollars in overhead expenses above and beyond that reimbursed by OEA. They seek, *inter alia,* restoration of these sums and rescission of the NOA amendment. Plaintiffs' complaint asserts claims for breach of the implied covenant of good faith and fair dealing, breach of contract and equitable fraud.

### III. STANDARD FOR MOTION TO DISMISS

In considering a motion to dismiss, the Court must accept all the factual allegations

---

1. In the Court's opinion on defendant's motion to dismiss the [First] Amended Complaint the papers presented the situation as an entry into a new employment contract. Only upon reading the briefing on defendant's motion to dismiss the Second Amended Complaint was the Court able to ferret out that rather than entering into a new employment contract, the parties merely amended the existing R830 employment agreement.

of the complaint as true. *Melo v. Hafer*, 912 F.2d 628, 634 (3d Cir.1990), *reh'g denied en banc*, (3d Cir.1990), *cert. granted*, 498 U.S. 1118, 111 S.Ct. 1070, 112 L.Ed.2d 1176, *and aff'd*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Dismissal will only be granted when, accepting all factual allegations as true and drawing all reasonable inferences in favor of the non-moving party, "no relief can be granted under any set of facts which could be proved." *Id.* at 634. In applying this standard, the burden to show the failure to state a claim rests with the moving party. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980).

## IV. DISCUSSION

### A. COUNT I—BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs' first count asserts defendant breached the implied covenant of good faith and fair dealing inherent in all contracts, including employment contracts, in the State of Delaware. The Court must first consider whether such a cause of action may be properly brought where, as here, plaintiffs assert the breach occurred in the adoption of an amendment to a pre-existing employment contract. As the Court finds no cause of action exists for breach of the implied covenant where there is an amendment to an existing employment contract, it does not address defendant's requests to strike various paragraphs of the Second Amended Complaint which refer to that cause of action.

Plaintiffs' first count alleges a breach of the implied covenant of good faith and fair dealing. At common law, this implied covenant has been said to exist in every contract. *See* Restatement (Second) of Contracts § 205 (1979). Much controversy has revolved around the application of the covenant in the area of employment law since it has potential for conflict with the employment at-will doctrine. *See Gordon v. Matthew Bender & Co.*, 562 F.Supp. 1286 (N.D.Ill.1983). In the recent case of *Merrill v. Crothall–American, Inc.*, 606 A.2d 96 (Del.1992), the Delaware Supreme Court held that the implied covenant of good faith and fair dealing exists in every employment contract made under the laws of Delaware, including at-will employment contracts. In adopting this stance, the Court recognized that the existence of the implied covenant creates a tension between an employer's legal entitlement to pursue its own best interest and the employer's obligation not to overreach in the hiring process. *Id.* at 101.

In *Merrill* the plaintiff, after various communications with the defendant, accepted an offer of employment and joined the defendant company as an at-will employee. A few months later plaintiff was fired. *Id.* at 98. Plaintiff alleged defendant had breached the implied covenant since at the time it hired plaintiff it contemplated employing him only temporarily while permitting him to assume that his employment was at-will, i.e., of indefinite, rather than finite, duration. The Delaware Supreme Court agreed. It determined that the covenant is breached by the employer where its conduct amounts to " 'fraud, deceit or misrepresentation.' " *Id.* (quoting *A. John Cohen Ins. v. Middlesex Ins. Co.*, 8 Mass.App. 178, 392 N.E.2d 862 (1979)). The Court held such misrepresentation occurs where the employer "induces another to enter into an employment contract through actions, words, or the withholding of information which is intentionally deceptive in some way material to the contract." *Id.* It noted that an employee must not be allowed to assume some item material to the contract which the employer secretly contemplates will not be so. *Id.* at 102.

Plaintiffs in the instant case assert their circumstances fall within the scope of *Merrill*. Essentially they urge that at the time they modified their employment agreements by signing the amendment under which plaintiffs became NOAs, defendant contemplated changing its underwriting policies in ways that would materially impair plaintiffs' ability to receive adequate overhead reimbursement, under the terms of their employment contract as modified. Defendant's secret contemplation of such action, contend plaintiffs, violated the implied covenant of good faith and fair dealing.

The very recitation of the facts demonstrates the present case is not within the four

corners of *Merrill.* The Court must therefore predict whether the Delaware Supreme Court would do as plaintiffs here request, that is, extend *Merrill* to cover the scenario where fraud is alleged to have occurred in the modification of an existing employment contract. *Nationwide Ins. Co. v. Resseguie,* 980 F.2d 226, 230 (3d Cir.1992). The Court takes no position on whether plaintiffs' allegation would be sufficient to state a claim for breach of the implied warranty if defendant's actions had occurred in the context of formation of a new employer-employee relationship. The Court holds, however, that a cause of action for breach of the implied covenant may be maintained only for fraud in the hiring or firing[2] of employees, not for fraud in the modification of an existing employment contract.

As the Delaware Supreme Court noted, its determination to recognize a cause of action for breach of the covenant of good faith and fair dealing was an incursion into the employment at-will doctrine because it limited a business' ability to pursue its economic goals unfettered. But the court intended its incursion, i.e., application of the covenant in the hiring context, to be small. *Id.* at 101 ("We believe, however, that holding an employer to a requirement of good faith when making employment contracts represents a minimal, and wholly justifiable, interference in the management of [a company's] business."). The extension of *Merrill* requested by plaintiffs would result in an incursion far different in magnitude than that contemplated by the Delaware Supreme Court in *Merrill.*

In *Merrill* the Delaware Supreme Court limited a business' unfettered freedom to pursue its goals by interjecting the possibility of litigation based on facts which occurred at a point prior to the establishment of an employer-employee relationship. The magnitude of the incursion requested here is far larger since every employee, dissatisfied with action taken by his or her employer with respect to his or her working conditions, will invariably be able to frame a complaint that the employer in some manner misled him or her and thus claim a breach of the implied covenant of good faith and fair dealing. Further if plaintiffs' position were adopted it would mean the covenant would be applied to an ongoing, and in this case continuous,[3] employment relationship thereby virtually eliminating the employment at-will doctrine in Delaware. Stated differently, the tension between the covenant and the employment at-will doctrine is such that expansion of applicability of the covenant produces a corresponding reduction in the scope of the at-will doctrine. Considering that the employment at-will doctrine has been the law of Delaware for one hundred years or more, *see Greer v. Arlington Mills Mfg. Co.,* 43 A. 609 (Del.1899); *Drake v. Hercules Power Co.,* 55 A.2d 630 (Del.Super.Ct.1946); *Haney v. Laub,* 312 A.2d 330 (Del.Super.Ct.1973), I do not believe the Delaware Supreme Court would sanction an incursion into the employment at-will doctrine so large as to emasculate it. It is therefore held the covenant of good faith and fair dealing is not applicable to a modification of an existing employment contract in the context of an ongoing employment relationship.[4]

The above holding is not without its weakness. For example, Company A, with whom plaintiff seeks to begin an employment relationship, would be subject to the covenant if it induces plaintiff to enter such relationship

---

2. There is left to another day the delineation of the contours of the doctrine as it applies to termination of employees. The Delaware Supreme Court did indicate the implied covenant may, under some circumstances, be violated by termination of an employee. *Merrill,* 606 A.2d at 102.

3. Plaintiffs, through their counsel, upon questioning by the Court, made clear they have no interest in severing their relationship with Allstate.

4. This conclusion is bolstered by the fact that the Delaware Supreme Court chose to recognize a cause of action for breach of the implied covenant in an employment setting at a time when, as one commentator has noted, the popularity of such cause of action is declining. States are opting instead to recognize causes of action based on implied-in-fact contract or public policy tort theories. Henry H. Perritt, Jr., *Implied Covenant: Anachronism or Augur?,* 20 Seton Hall L.Rev., 683, 687–88 (1990). Under such circumstances, it appears unlikely the Delaware Supreme Court would choose to drastically expand this theory of liability.

by fraudulent means. Company B, with whom plaintiff is currently employed, however, could engage in identical deceit in order to induce plaintiff to agree to different working conditions and not be subject to the covenant. The force of this undesirable result is blunted because the employee still has available to him or her a fraud or equitable fraud theory. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing will be dismissed with prejudice.

## B. COUNT II—BREACH OF CONTRACT

■ In Count II plaintiffs aver, "Plaintiffs' R830 Agent Compensation Agreements with Allstate provide that Allstate will compensate them at specified commission rates for insurance policies sold by plaintiffs." D.I. 44 ¶ 58. Plaintiffs further allege that as a result of the unreimbursed expenses plaintiffs incurred upon entering the NOA program, the net amount of compensation they have received from Allstate is lower than required by their R830 Agent Compensation Agreements. D.I. 44 at ¶ 59. The Court finds plaintiffs' allegations do not support a claim for breach of contract.

As it stands, the language of the complaint does not allege any breach of contract. Once plaintiffs entered into the NOA amendment, their compensation was governed by the original R830 agreement *as modified by* the NOA amendment. Plaintiffs have made no assertion the amount of compensation they received violated the terms of the agreement as modified by the amendment.

At oral argument plaintiffs further developed the theory of Count II. They explained that, should the amendment be rescinded as plaintiffs request in Count III, what would remain would be only the original R830 agreement, unmodified by the NOA amendment. If the net compensation plaintiffs received under the NOA amendment is measured against that received under the terms of the unmodified agreement, plaintiffs assert, the amount received will be found to be significantly less than that called for by the

terms of the unmodified agreement. This, however, still does not state a claim for breach of contract. Defendant cannot be adjudged in breach of a contract that did not exist. The difference in net compensation of which plaintiffs complain results from a shortfall in the amount of reimbursement plaintiffs received in the form of OEA. This amount, if recoverable, is, arguably, properly an element of compensatory damages under Count III.

Count II of plaintiffs' Second Amended Complaint will be dismissed.[5]

## C. COUNT III—EQUITABLE FRAUD

The third count of plaintiffs' complaint is one for equitable fraud. Defendant seeks dismissal of plaintiffs' claim for equitable fraud on the ground that plaintiffs did not adequately allege defendant failed to disclose certain information in the face of a duty to do so or that defendant affirmatively misrepresented such information. In addition, defendant attacks plaintiffs' ability to receive the remedy they seek, i.e., rescission. In the alternative defendant challenges plaintiffs' assertion that any of the five factual bases alleged in the Second Amended Complaint is sufficient to support a claim for equitable fraud. It asserts four of the five factual bases cannot support plaintiffs' claim and asks this Court to strike the paragraphs containing these four factual bases on that ground. Because comprehension of plaintiffs' theory of equitable fraud is facilitated by an understanding of the factual allegations supporting their claim, the Court first addresses first defendant's request to strike the paragraphs containing certain of plaintiffs' factual bases.

### 1. Striking of Factual Allegations

Plaintiffs urge defendant's misrepresentation or failure to disclose any of five facts is sufficient to support their claim for equitable fraud. Defendant contends the failure to disclose four of these five facts cannot constitute equitable fraud. Because defendant does not contest the sufficiency of one of

---

5. Because the Court has dismissed Counts I and II of plaintiffs' Second Amended Complaint, it need not address defendant's assertion that puni-

tive damages are not available under those counts.

these factual bases, this portion of defendant's argument is more properly termed a motion to strike under Fed.R.Civ.P. 12(f)[6] and, in fact, defendant's request is that the Court strike the paragraphs containing these facts.

### a. Defendant's Knowledge of and Its Failure to Disclose That Plaintiffs Would Have to Expend Significant Sums of Their Own Money to Cover Overhead Expenses Because the OEA Would Be Insufficient

The first two bases for equitable fraud asserted by plaintiffs are that defendant misrepresented or failed to disclose

Allstate's knowledge of the probability or the substantial possibility that Toner and Potter's OEA reimbursement would be inadequate to cover their office expenses; Allstate's knowledge of the probability or substantial possibility that plaintiffs would be forced to expend, each year, thousands of dollars of the compensation they earned in commissions under their R830 Agent Compensation Agreements to pay for the expenses of operating their offices and that would not be reimbursed through OEA....

D.I. 44 at ¶ 54. Defendant addresses these two factual allegations together contending they cannot support a claim for breach of the implied covenant.[7]

The gravamen of this claim is that at the time defendant and plaintiffs entered into the modification of the existing employment agreement by which plaintiffs became NOAs, defendant knew the overhead reimbursement (OEA) to plaintiffs as NOAs would be woefully inadequate and therefore plaintiffs would necessarily incur significant cost outlays in the form of office overhead expenses. According to plaintiffs, defendant failed to disclose this fact and/or affirmatively misrep-

resented that the OEA would be adequate to cover plaintiffs' overhead costs.

Defendant urges that its failure to disclose the fact that plaintiffs would necessarily incur significant unreimbursed overhead costs cannot constitute equitable fraud "because plaintiffs had *actual* notice of that [sic] they might spend 'thousands of dollars' above and beyond their OEA reimbursement." D.I. 49 at 10. Defendant asserts plaintiffs received such actual notice by a statement in the amendment by which plaintiffs became NOAs. The amendment provides, "Allstate reimburses the actual expenses to the limit of the agent's OEA for specified office expenses described in the Neighborhood Office Agent Manual(s). *Any amount spent in excess of the OEA is the responsibility of the agent.*" D.I. 44 Ex. C (emphasis added). Defendant argues plaintiffs' purported actual knowledge of the possibility they might incur substantial outlays beyond the OEA vitiates any possible claim by plaintiffs that they reasonably relied on defendant's nondisclosure and/or affirmative misrepresentations.

"An essential element of [a fraud] claim ... is that the alleged victim not be aware of the true facts which are misrepresented." *Merrill,* 606 A.2d at 100. Thus if plaintiffs knew that they might have to expend substantial sums above the OEA, no claim for fraud would lie. The Court, however, cannot say plaintiffs possessed such knowledge by reason of the NOA amendment. Read in the light most favorable to plaintiffs, the language relied upon by Allstate merely indicates plaintiffs' overhead expenses may (or may not) exceed the amount of the OEA reimbursements. The language does not tell plaintiffs that their overhead necessarily would exceed OEA reimbursement. Further, in view of plaintiffs' allegation that they did not know that OEA reimbursement would leave a substantial deficit in overhead expenses, it would be inappropriate to give

---

6. Federal Rule of Civil Procedure 12(f) permits the Court to strike from a complaint any redundant, immaterial, impertinent, or scandalous matter. In determining whether certain factual bases are irrelevant to plaintiffs' claim, and therefore subject to dismissal, the Court must accept all well-pleaded facts as true. James W. Moore & Jo D. Lucas, Moore's Federal Practice § 12.21[3] (2d ed. 1993).

7. Defendant also asserts this allegation is insufficient because it has not been pled with the particularity required by Fed.R.Civ.P. 9(b). It challenges the specificity of terms in the complaint such as "substantial possibility." Because defendant failed to elaborate, the Court will not address it.

defendant, the movant, the benefit of a competing inference on a motion to strike allegations of the complaint.

**b. Defendant's Knowledge of and Its Failure to Disclose the Existence and Nature of the Financial Benefit It Expected to Receive Under the Amendment to the Agent Compensation Agreement**

The second factual basis for plaintiffs' claim for equitable fraud challenged by defendant is defendant's alleged failure to disclose "the existence and nature of the financial benefits Allstate expected to gain from plaintiffs' participation in the NOA program...."

Defendant argues no party to a contract should, as a matter of course, be forced to tell the other party exactly what it hopes to receive as a result of the contract. Defendant is correct. Plaintiffs allege defendant's sales managers affirmatively misrepresented that plaintiffs would incur little, if any, overhead expenses. D.I. 44 at ¶¶ 14, 23. Having allegedly made misrepresentations about the adequacy of the OEA, Allstate was required to disclose what burden plaintiffs would incur, i.e., significant unreimbursed overhead expenses, but it was not required to disclose what benefit Allstate expected to derive. There remains for trial the issue of whether plaintiffs will be precluded from showing that defendant's motivation for placing plaintiffs in a position of having to incur such overhead expenses was a desire to shift such costs from its own shoulders. As a consequence of the Court's ruling, ¶ 37d and portions of ¶¶ 40 and 61 of plaintiffs' Second Amended Complaint referencing defendant's expected benefits will be ordered stricken.

**c. Defendant's Knowledge of and Its Failure to Disclose that Plaintiffs would be Unable to Attain the Sales Goals Outlined in Their Proposals to Defendant**

The complaint alleges that before accepting plaintiffs into the NOA program defendant directed them to prepare plans projecting their future sales of new business. D.I. 44 at ¶¶ 15, 44. Plaintiffs have not met these sales goals. Id. at ¶¶ 21, 31. Plaintiffs allege fraud in that defendant misrepresented or failed to disclose that plaintiffs probably "would not be able to attain the sales goals set forth in their business plans...." Although such an allegation seems counterintuitive, under the circumstances of this case, this allegation may support a claim for equitable fraud.

Essentially, plaintiffs contend: (1) that defendant required them to prepare a sales plan and required such sales plan to forecast increasing levels of sales, D.I. 44 at ¶ 36; (2) that plaintiffs believed the sales plans they drafted in accordance with defendant's requirements were reasonable under defendant's then existing underwriting policies, Id. at ¶¶ 16, 25; (3) that defendant's approval of such plans constituted defendant's representation that such goals were reasonable, Id. at ¶¶ 16, 26; (4) that defendant knew such sales goals were unreasonable because defendant planned to hamper plaintiffs' abilities to meet these goals by changing its underwriting policies to reduce its acceptance of new business, Id. at ¶ 41; and (5) that because defendant later carried through with its plan to reduce acceptance of new business plaintiffs were unable to meet the sales goals they had projected and thereby receive OEA adequate to cover their overhead expenses.

The only challenge defendant makes to this factual basis is that plaintiffs failed to plead defendant had some way of knowing that plaintiffs would be unable to reach these goals. As plaintiffs allege, however, the reason defendant knew plaintiffs would be unable to meet their goals of increasing sales levels was because defendant was "actively considering a deliberate decision to put into effect, at some point ahead in time, a plan to reduce its acceptance of new business in northern Delaware for automobile and/or other property and casualty insurance." Id. at ¶ 41. Plaintiffs have alleged that defendant knew plaintiffs would probably not be able to sell larger and larger amounts of new policies as their business plans forecasted due to the fact that defendant was going to reduce the amount of new business plaintiffs could generate.

The Court finds defendant's argument that the foregoing factual allegations should be stricken unpersuasive.

### 2. Alleged Misrepresentation or Failure to Disclose in the Face of a Duty to Speak

Defendant argues that even if these factual bases may theoretically be sufficient to support a claim for equitable fraud, they cannot do so under the facts of the instant case because defendant made no affirmative misrepresentation and because it had no duty to disclose the facts complained of by plaintiffs. It also asserts that even if it had such a duty, Count III must still be dismissed due to plaintiffs' failure to adequately plead such a duty.

■ The elements of equitable fraud are: (1) either (a) a false representation, usually one of fact, made by the defendant innocently, negligently, with reckless indifference to the truth or with the knowledge or belief the representation was false or (b) a deliberate concealment of some material fact or (c) silence in the face of a duty to speak; (2) an intent on the part of the defendant to induce the plaintiff to act or refrain from acting; (3) action or inaction of the plaintiff taken in justifiable reliance on the defendant's representation, concealment or silence; and (4) damage to the plaintiff resulting from such reliance.

*See Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 & n. 4 (Del.1992). Thus, equitable fraud may be premised upon a false affirmative misrepresentation even if innocently made, upon active concealment of a material fact or upon a failure of defendant to disclose a material fact in instances where defendant has a duty to speak. Plaintiffs make no claim of active concealment, but they do assert a claim based both on misrepresentation and on failure to disclose.

### a. Alleged Affirmative Misrepresentation

■ Plaintiffs' assertion that defendant affirmatively misrepresented material facts is based on statements made to them by defendant's sales managers, Hanks and Buzzard. Plaintiffs allege the sales managers told them they would incur "few, if any, costs in operating a NOA office, because Allstate would reimburse all, or nearly all, such expenses through OEA payments." D.I. 44 at ¶¶ 14, 23. Defendant argues no claim may lie for equitable fraud based on affirmative misrepresentation because its representations, made through Hanks and Buzzard, were mere "puffing" or "sales talk."

Under Delaware law, "It is the general rule that mere expressions of opinion as to probable future events, when clearly made as such, cannot be deemed fraud or misrepresentations." *Consolidated Fisheries Co. v. Consolidated Solubles Co.*, 112 A.2d 30, 37, *opinion supplemented,* 113 A.2d 576 (Del. 1955). *See also, Eastern States Petroleum Co. v. Universal Oil Products Co.*, 3 A.2d 768, 775 (Del.Ch.Ct.1939) (to be actionable, statement must not be one of opinion or prediction of possible future events). While a determination of whether a statement is one of opinion or fact may sometimes be made without specific factual information, *see Toner v. Allstate Ins. Co.*, 821 F.Supp. 276, 281 (D.Del.1993) (determining on motion for dismissal statement, "the sky was the limit" constituted mere opinion), often factual information is needed. As the Supreme Court of Delaware has noted,

> In determining whether a statement is made as a mere opinion, or whether it can be fairly and reasonably understood as having been intended as an assertion of a fact, both the form of the words used and the subject matter of such statement must be considered. But even when statements, positive in form, are made, in view of the nature of the matter being discussed, the other party may frequently know that such statement is necessarily intended to be a mere opinion. Whether, however, that is true in the particular case necessarily depends on the facts."

*Eastern States Petroleum,* 3 A.2d at 775–76. Factual information is necessary to determine whether the statement at issue here constituted a representation of fact, or merely opinion. The Court, therefore, is unable to resolve this question at this time. Defendant's argument is misdirected given the procedural posture of the case.

The Court holds plaintiffs' allegation, that defendant affirmatively misrepresented that plaintiffs would not be required to expend significant amounts of their own money for overhead expenses since the OEA would be adequate, is sufficient to support plaintiffs' claim for equitable fraud.[8]

### b. *Existence of a Duty to Disclose*

Defendant argues no claim for equitable fraud may lie based on its failure to disclose certain facts because it was under no duty to disclose those facts. The Court must determine whether defendant was under a duty to disclose any of the five facts plaintiffs contend it knew and withheld, specifically: (1) the substantial possibility that plaintiffs would be forced to expend significant amounts of their own money to cover overhead expenses as the OEA would be inadequate;[9] (2) that defendant was considering a deliberate reduction in acceptance of new business in the form of automobile and/or other property and casualty insurance underwriting with such reduction having a direct negative effect on plaintiffs' net compensation; (3) the substantial possibility that plaintiffs would not be able to meet the goals established in their business plans; (4) the existence and nature of the benefit Allstate sought to receive by a conversion of plaintiffs from "true employee" to NOA status. D.I. 44 at ¶ 61.

Plaintiffs argue defendant had a duty to disclose certain facts in order to prevent statements actually made by the defendant from being misleading. This is an accurate statement of Delaware law. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). In the present case, Hanks and Buzzard allegedly misrepresented that the OEA would cover virtually all, if not all, of plaintiffs' overhead expenses. Because of this representation, defendant had a duty to disclose three of the four facts plaintiffs contend it withheld in order to prevent plaintiffs from being mislead. Defendant was under a duty to disclose that plaintiffs were likely to incur significant overhead expenses above and beyond that reimbursed by OEA. In addition, because plaintiffs allege OEA reimbursement amounts were directly proportional to the amount of new business the agents brought in, D.I. 44 at ¶¶ 41–42, defendant was also duty bound to disclose its contemplated decreased acceptance of new business. Finally, because plaintiffs allege Allstate's then contemplated, and later actual, decrease in acceptance of new business caused plaintiffs to be unable to meet their sales goals and thereby receive OEA adequate to cover their overhead expenses, defendant had a duty to disclose such goals would be unattainable. The Court cannot say, however, that defendant had a duty to disclose the benefit it expected to receive, as Hanks and Buzzard made no representations concerning the benefits defendant anticipated.[10]

---

8. Defendant also argues Hanks' and Buzzard's statements could not form a basis for fraud if they were true or believed to be true when made. These arguments are easily answered. First, in an action for equitable fraud, proof that defendant knew of the falsity of its statement is not required. *Gaffin*, 611 A.2d at 472. Second, a motion to dismiss cannot be utilized to assess the truth of a representation.

9. Again for purposes of this motion, defendant and the Court treat the first two facts alleged, i.e., that the OEA would be insufficient to cover overhead costs and that plaintiffs would therefore be forced to expend thousands of dollars of their own money to meet these, as one. As a result, although defendant actually challenges its duty to speak as to all five of plaintiffs' alleged factual bases for its fraud claim, the Court addresses all five facts in only four subsections.

10. Plaintiffs also argue defendant had a duty to disclose all four of these facts because defendant stood in a fiduciary relationship to plaintiffs.

The Delaware Court of Chancery has determined that

[a] fiduciary relationship is a situation where one person reposes special trust in and reliance on the judgment of another or where a special duty exists on the part of one person to protect the interests of another. The relationship connotes a dependence. A fiduciary relation implies a condition of superiority of one of the parties over the other.

*Cheese Shop Int'l v. Steele*, 303 A.2d 689, 690 (Del.Ch.Ct.), *rev'd on other grounds*, 311 A.2d 870 (Del.1973). Plaintiffs, seizing on the language of the last sentence, contend that defendant as employer stood in a position of superiority over plaintiffs, and conclude that a fiduciary relationship therefore existed between the parties.

Plaintiffs present no authority, however, for the proposition they urge, i.e., that under Delaware law an employer and employee, simply by virtue of their present or contemplated future employment relationship, stand in a fiduciary relationship to one another with respect to agree-

### c. *Adequacy of Pleading Defendant's Duty to Disclose*

The Court, having found defendant had a duty to speak as to four of the five factual bases alleged by plaintiffs to constitute equitable fraud, must consider defendant's argument that plaintiffs have not adequately pled defendant's duty to disclose. Defendant contends that even if it did have a duty to disclose, plaintiffs' claim must be dismissed because Fed.R.Civ.P. 9(b) requires plaintiffs to *plead* the existence of defendant's duty to disclose, and plaintiffs have not done so.

The Third Circuit Court of Appeals has held, albeit in the fraudulent misrepresentation context, that Rule 9(b) requires a plaintiff to plead the elements of his or her action for fraud. *Christidis v. First Pa. Mortgage Trust,* 717 F.2d 96, 99 (3d Cir. 1983). As the first element of plaintiffs' claim is a failure to disclose certain information in the face of a duty to do so, it appears *Christidis* requires plaintiffs to plead defendant's duty to disclose. Even heeding *Christidis'* caution that "in applying the rule, focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules[,]'" plaintiffs' pleading is deficient. *Christidis,* 717 F.2d at 100 (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 407 (1969)). The existence and nature of defendant's duty to speak must be pled in order to satisfy one of the purposes of the particularity rule. Particularity is required of pleadings in fraud cases so as to provide a defendant, against whom the very serious accusation of fraud has been made, information adequate to form a defense. *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.,* 755 F.Supp. 1055, 1056 (S.D.Ga.1990). In the present case, if defendant had no duty to speak, it possesses a complete defense to plaintiffs' charges of nondisclosure. By failing to allege defendant's duty to disclose the facts at issue, plaintiffs have deprived defendant of the opportunity to attack plaintiffs' allegation of that duty. The Court, therefore, finds that even though defendant had a duty to disclose certain facts to correct alleged earlier misrepresentations by its employees, plaintiffs' equitable fraud count is deficient because plaintiffs have failed to plead defendant's duty to disclose.

In summary, defendant's request that this Court strike certain factual allegations of the Second Amended Complaint as they fail to support a claim for equitable fraud will be denied except as to the allegation defendant failed to disclose the existence and nature of the financial benefit it expected to receive. In addition, plaintiffs' failure to adequately plead defendant's duty to disclose prevents them from pursuing a claim for equitable fraud under the Second Amended Complaint based on defendant's failure to disclose. Plaintiffs will be given permission to amend their Second Amended Complaint for the sole purpose of alleging defendant's duty to disclose. Plaintiffs will not be permitted to amend their complaint in any other manner. Count III will not be dismissed, however, as plaintiffs' claim for equitable fraud premised on affirmative misrepresentation remains viable.

### 3. *Rescission*

Defendant's final argument as to Count III is that plaintiffs' requested remedy of rescission is unavailable. Defendant asks the Court to strike plaintiffs' request for rescission from the Second Amended Complaint.

Plaintiffs seek rescission of the NOA amendment with the goal that plaintiffs would resume their status as conventional employees of Allstate rather than remain NOAs. Defendant has moved to strike this prayer from the complaint on the theory that the remedy of rescission is not available to plaintiffs. Defendant advances four reasons as to why this remedy is not available: 1) Plaintiffs ratified the NOA amendment; 2) plaintiffs failed to plead an offer to return all benefits obtained under the NOA amend-

---

ments governing such relationship. The Court is also unaware of any such authority and therefore finds plaintiffs' contention unpersuasive.

ment; 3) laches; and 4) the parties cannot be restored to their prior positions.[11]

■ Defendant first argues that, notwithstanding any fraud defendant might have perpetrated by inducing plaintiffs to agree to the NOA amendment, rescission should not be granted because plaintiffs have ratified the amendment. One who has been fraudulently induced to enter a contract is entitled to rescission of that agreement. *Eastern States Petroleum Co. v. Universal Products Co.,* 3 A.2d 768, 776 (Del.Ch.Ct.1939). It is also true that one who, after discovering the fraud, affirms a fraudulently obtained contract or acts in a way inconsistent with disaffirmance may not avail himself of this remedy. *Lee Builders, Inc. v. Wells,* 92 A.2d 710 (Del.Ch.Ct.1952).

■ Defendant argues that although nothing in the complaint indicates when plaintiffs discovered the alleged fraud, it is certain they must have known of it by the date of the filing of their complaint. Defendant further urges that since the date of original filing, plaintiffs have acted in a manner inconsistent with disaffirmance by accepting the benefits of the NOA amendment and therefore may not avail themselves of the remedy of rescission.

Each plaintiff seeks to rescind the NOA amendment to his Agent Compensation Agreement. If this relief is granted, the parties' relationships would again be governed by the basic R830 agreement. Rescission is superficially inconsistent with plaintiffs continuing to accept the "benefits" of the NOA amendment including, according to defendant, the "entrepreneurial freedoms" that amendment gives them. D.I. 44 Ex. C. As plaintiffs point out, however, they are prohibited from giving up these aspects of their employment by the NOA amendment itself. That document states, "As a Neighborhood Office Agent, you may not return to any former agent status." D.I. 44 Ex. C. In short defendant seeks to require plaintiffs to do something defendant contractually prevents plaintiffs from doing. On these facts, plaintiffs' continuing acceptance of benefits derived from the NOA amendment does not render plaintiffs' claim for rescission objectionable.

■ In a related argument, defendant asserts rescission is unavailable because plaintiffs' complaint does not plead an offer to return all benefits plaintiffs have received under the amendment since they became NOAs. In general, a plaintiff seeking rescission must plead an offer to return the benefits it has received under the contract it wishes to rescind. *Eastern States Petroleum Co. v. Universal Oil Products Co.,* 49 A.2d 612, 617 (Del.Ch.Ct.1946). Defendant contends plaintiffs have received office furniture, signs, etc., and have failed to plead an offer to return them. Plaintiffs point out, however, that of those items which defendant contends plaintiffs received, any that are referred to in the complaint and its attachments have not in fact been received by plaintiffs. D.I. 44 Ex. C (specifying that signs and office furniture remain property of defendant). The complaint and its attachments on their face do not reveal that plaintiffs have received anything of value by virtue of the NOA amendment other than OEA reimbursement payments. As to these payments, defendant concedes plaintiffs need not plead an offer to return them as they are money payments which may be credited against any award made to plaintiffs if they succeed on their claim for rescission. D.I. 49 at 36 n. 13. Rescission is not made unavailable due to a failure of plaintiffs to plead an offer to return any benefits received under the NOA amendment to defendant.

■ The third argument in defendant's arsenal is that plaintiffs have waited too long to bring their claim and therefore are barred from rescinding the NOA amendment under the doctrine of laches. Defendant asserts such delay is evidenced by Toner's seven and Potter's five year tenures as a NOA agents. The time period relevant to a laches defense is that between plaintiffs' discovery of the

---

**11.** Defendant also contends that plaintiffs' failure to plead their request for rescission with particularity necessitates dismissal of such request. Defendant is incorrect. Federal Rule of Civil Procedure 9(b) merely requires plaintiffs to plead with particularity "the circumstances constituting the fraud," not the relief sought as a result of such fraud.

fraud and institution of suit. *See Gannett Co. v. State of Delaware,* 1993 WL 19714 at *9 (Del.Ch.Ct. Jan. 11, 1993). The complaint is silent as to this critical period, with the consequence that the laches defense must fail in the present procedural content of a motion to dismiss.

Finally, defendant contends rescission is unavailable because it would be impossible to put the parties back in the positions they occupied prior to the amendment of plaintiffs' contracts. To this end defendant asserts it will be impossible to distinguish which of plaintiffs' sales resulted from their increased "entrepreneurial freedom," and it will be impossible to determine which of the expenses incurred by plaintiffs would have been incurred by defendant if it had run the offices. Furthermore, asserts defendant, Toner and Potter cannot go back into the Allstate operated offices they once worked out of because such offices are closed. Although the Court fails to see the relevance of much of defendant's argument, the argument is unavailing for a more fundamental reason. None of the defendant's factual assertions are part of the Second Amended Complaint and its attachments. While this argument may prove meritorious at some later point in time, it is simply improperly made at this procedural juncture.

Defendant's motion to strike plaintiffs' request for rescission as a remedy under Count III will be denied.

## V. *CONCLUSION*

The Court has held a claim for breach of the implied covenant of good faith and fair dealing may not be asserted in this context, where the parties have amended an existing employment contract. Defendant's motion to dismiss Count I of plaintiffs' Second Amended Complaint has been granted. Defendant's motion to dismiss Count II, for breach of contract, of plaintiffs' Second Amended Complaint has been granted. Finally, defendant's motion to dismiss Count III, plaintiffs' claim for equitable fraud, will be denied as plaintiffs' claim premised on affirmative misrepresentation is viable. Plaintiffs, however, have failed to adequately plead defendant's duty to disclose various facts upon which they base their fraud claim. Plaintiffs may move to amend their Second Amended Complaint for the sole purpose of alleging such duty within twenty days. If they fail to do so, they will be foreclosed from pursuing their fraud claim based on defendant's duty to disclose. Defendant's request to strike those facts alleging that fraud resulted from defendant's failure to disclose the existence and nature of the benefit it expected to receive as a result of the NOA amendment will be granted. In addition ¶ 37d and those portions of ¶¶ 40 and 61 referencing the existence and nature of the financial benefits Allstate expected to gain as a result of implementing the NOA program will be ordered stricken.

An order will be entered in accordance with this opinion.