MILES SCHLICHTE, executor,[1] *vs.* GRANITE SAVINGS BANK.

No. 94-P-340.

Essex. March 13, 1995. - March 19, 1996.

Present: ARMSTRONG, GILLERMAN, & LAURENCE, JJ.

*Bank. Negligence,* Bank. *Personal Property,* Bank account. *Agency,* Scope of authority or employment.

In an action seeking recovery of funds fraudulently withdrawn from certain joint accounts, the bank was not shown to be negligent in the establishment of the joint accounts [180-181], nor to have been negligent in supervising its employee who was authorized to draw on the joint accounts [181], nor to be vicariously liable for the employee's having withdrawn money from the accounts for her own benefit, where those acts were not within the scope of her employment: the bank's motion for summary judgment was correctly allowed [181-183].

CIVIL ACTION commenced in the Superior Court Department on June 19, 1992.

The case was heard by *Howard J. Whitehead*, J., on a motion for summary judgment, and a motion for final and separate judgment was heard by *Peter F. Brady*, J.

*Kevin S. Sullivan* for the plaintiff.

*Judith Gail Dein* for the defendant.

ARMSTRONG, J. Frances Colantuono, an elderly woman living alone in Rockport, by 1987 had come to rely on her cousin, Janice Aspesi, to assist her in many household chores and personal needs. In April of that year, while hospitalized, Colantuono executed two joint account authorizations, adding Aspesi's name as joint owner of deposit accounts in the Granite Savings Bank, where Aspesi was an employee. A third account was later made joint, and these accounts, coupled with certificates of deposit put in the joint names, totaled roughly $100,000. By 1991 they had shrunk to roughly

[1]Of the estate of Frances Colantuono.

$2,000, Aspesi having spent much of the money for her own benefit. In 1991 the plaintiff, then acting as lawyer for Colantuono, directed the bank not to permit further withdrawals by Aspesi. Colantuono died in 1992, and the plaintiff, as executor of the estate, brought this action to recover funds from both Aspesi and the bank. In a thoughtful memorandum of decision, a judge of the Superior Court allowed the bank's motion for summary judgment, and the case is here on the plaintiff's appeal from a separate, final judgment entered for the bank under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

The plaintiff contends that Colantuono's purpose in executing the joint account authorizations was to facilitate Aspesi's helping her with managing her finances, not to make a gift to Aspesi. Whatever may have been the understanding between Aspesi and Colantuono, there is no evidence that any restriction on Aspesi's right to draw on the accounts was communicated to anyone in the bank, other than Aspesi herself, prior to the plaintiff's 1991 letter.[2] The plaintiff's case against the bank was premised on three theories, which are discussed below.

1. *Negligence in the establishment of the joint accounts.* The plaintiff's theory here was that the bank was negligent in not questioning the authorizations, because no one from the bank, other than Aspesi, actually witnessed Colantuono's signing of the authorizations. Aspesi took the first two authorizations to Colantuono in the hospital, where Colantuono signed them and a nurse signed on a line provided for a witness. Other authorizations, apparently signed after Colantuono left the hospital, followed a similar pattern. The plaintiff's first difficulty here is that, although the forms call for a witness, it is nowhere specified that the witness be a bank employee or even that the witness observe the act of signing. The only evidence bearing on the subject is that it is the policy of the bank to check the account holder's signature against the signature on file and, if the form has not previously been

---

[2]The authorizations state simply: "I hereby authorize that the name of _____ be added to my account # _____ making it a joint account payable to either or the survivor." The blanks were filled in, and the forms were signed by Colantuono and witnessed. There is no evidence, and there is reason to doubt, that the bank would have honored a joint account authorization that imposed on the bank an obligation to investigate the purposes for which funds were withdrawn.

witnessed, for the employee who verifies the signature to sign as witness. The second difficulty is that there is no evidence, nor does the plaintiff contend, that Colantuono did not in fact execute the forms, so that, whatever safeguards the witnessing procedure was meant to accomplish, the nonobservance bore no causal relationship to Colantuono's loss. There was ample evidence, too, from Colantuono's later statements, that she understood that, in executing the forms, she had given Aspesi access to the accounts.

2. *Negligent supervision of Aspesi.* The plaintiff's negligent supervision theory asserts that Aspesi's supervisors at the bank had a duty (1) to investigate due to the alleged "irregularities" in the authorization executions, (2) to make inquiry of Aspesi as to the purpose of the joint account authorization, and (3) to question large withdrawals, such as one for $50,000 shortly after the accounts had been made joint. As to (1), the plaintiff failed to provide evidence of "irregularities" (see part 1, *supra*). As to (2) and (3), the plaintiff cites no law, and adduces no evidence of a bank policy, that imposed on the bank the obligations suggested. The bank had no policy against employee accounts, individual or joint; and if the bank had investigated, and contacted Colantuono, she would have verified her intent to transform her accounts into joint accounts with Aspesi. Massachusetts law is clear, moreover, that banks do not have a duty to depositors to make inquiry as to withdrawals by an authorized person that do not contravene an express limitation on his authority to draw on the account. Rather, a bank's liability turns on its actual knowledge of a misappropriation of the depositor's funds. See *Allen* v. *Fourth Natl. Bank*, 224 Mass. 239, 244 (1916); *Kendall* v. *Fidelity Trust Co.*, 230 Mass. 238, 241-242 (1918); *Boston Note Brokerage Co.* v. *Pilgrim Trust Co.*, 318 Mass. 224, 227 (1945). "A banker having no interest in the matter, who pays out money on deposit on the fraudulent order of the person who by the terms of the deposit had the right to draw on the account, is liable only when he is privy to the depositor's fraud." *Newburyport* v. *First Natl. Bank*, 216 Mass. 304, 304-305 (1914). *Eastern Mut. Ins. Co.* v. *Altantic Natl. Bank*, 260 Mass. 485, 488 (1927).

3. *Respondeat Superior.* The plaintiff argues, finally, that the bank, as Aspesi's employer, is liable vicariously for torts committed by Aspesi within the scope of her employment.

"In [the employment] context, conduct of an agent is within the scope of employment if it is of the kind he is employed to perform . . . if it occurs substantially within the authorized time and space limits . . . and if it is motivated, at least in part, by a purpose to serve the employer. . . ." *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986). "The fact that the predominant motive of the agent is to benefit himself does not prevent the act from coming within the scope of the employment as long as the act is otherwise within the purview of his authority." *Id.*, at 859-860, citing Restatement (Second) of Agency § 236 comment b (1958). The first condition is satisfied, the plaintiff argues, by the fact that Aspesi, as a customer account representative, as part of her work assisted customers in establishing accounts at the bank; and the third, by the fact that Aspesi, after she obtained the authorizations but before withdrawing the money for her own purposes, converted some of the accounts into certificates of deposit, thereby marketing the bank's product. The plaintiff's difficulty, however, is that none of that activity was tortious. Only the withdrawals for her own purposes were tortious, and those were neither part of her job nor intended in any respect to benefit the bank. The judge concluded correctly that the conditions for vicarious liability were not met.

The plaintiff argues that "[t]he evidence is clear that Aspesi would not have succeeded in gaining control of nearly $100,000 of her cousin's life savings if she had not been a customer representative and teller at the bank." Manifestly that was not the case. The record is devoid of evidence that any customer could not have obtained joint account authorization forms and converted individual accounts to joint by exactly the same steps Aspesi used. There is nothing in the record to indicate that the completed forms were not checked (for authenticity of signatures) in exactly the same way that such forms would be checked if submitted by a nonemployee. Periodic statements showing the changes in the accounts continued to be mailed to Colantuono, who was unquestionably aware that the accounts were now joint. There was nothing wrongful in any of this. It was only when Aspesi started to siphon off money for her personal ends that wrongful conduct occurred. Colantuono's own instructions then obligated the bank to process Aspesi's withdrawals, as matters both of statutory law, G. L. c. 167D, § 5, and of contract.

*Sawyer* v. *National Shawmut Bank*, 306 Mass. 313, 315-316 (1940). *Astravas* v. *Petronis*, 361 Mass. 366, 370 (1972). *Desrosiers* v. *Germain*, 12 Mass. App. Ct. 852, 855 (1981). *Heffernan* v. *Wollaston Credit Union*, 30 Mass. App. Ct. 171, 177 (1991). The bank's motion for summary judgment was correctly allowed.

*Judgment affirmed.*